IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION No. 10-757 |
| | : | |
| v. | : | CIVIL ACTION No. 12-3460 |
| | : | |
| THOMAS ROBERTSON | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                                    **August 8, 2013**

Defendant Thomas Robertson, a federal prisoner, has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, raising claims of ineffective assistance of counsel and alleging the Government breached the terms of his plea agreement by seeking a two-level enhancement under the Federal Sentencing Guidelines to which the parties had not stipulated. The Government has filed a motion to dismiss Robertson's § 2255 motion based on the waiver of collateral review rights contained in his plea agreement. For the reasons set forth below, this Court concludes all of Robertson's claims are waived and/or fail on the merits. Therefore, the Government's motion will be granted, and Robertson's § 2255 motion will be dismissed.

## FACTS

In November 2010, Robertson was charged in a 40-count Indictment with one count of conspiracy, 12 counts of bank fraud, 23 counts of making false statements to obtain a loan, one count of aggravated identity theft, and one count of using a fraudulent passport, all arising out of his orchestration of a fraudulent scheme to obtain loans from numerous credit unions.[1] On March 10, 2011, Robertson pleaded guilty to all counts except the aggravated identity theft charge pursuant to a written guilty plea agreement. As part of the plea agreement, the

---

[1] Robertson was also charged with aiding and abetting several of the offenses alleged in the Indictment.

Government agreed to move to dismiss the aggravated identity theft charge, which carried a two-year mandatory consecutive sentence, at sentencing. Guilty Plea Agreement ¶ 5(a).

In paragraph 8 of the plea agreement, the parties agreed to a number of stipulations under the Sentencing Guidelines. The parties stipulated to a base offense level of seven pursuant to U.S.S.G. § 2B1.1(a); a loss amount of $1,495,117, corresponding to a 16-level increase in base offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(I); a two-level increase in offense level pursuant to U.S.S.G. § 2B1.1(b)(2)(A) because the offense involved 10 or more victims; and Robertson's eligibility, as of the date of the plea agreement, for a two-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and a one-level downward adjustment for timely notifying the Government of his intention to plead guilty pursuant to U.S.S.G. § 3E1.1(b). *Id.* ¶ 8(a)-(c), (e)-(f). Paragraph 8 also memorialized the parties' agreement to disagree as to the applicability of an aggravating role enhancement pursuant to U.S.S.G. § 3B1.1(c), and noted the Government's intention to "argue the applicability of that factor at the sentencing hearing." *Id.* ¶ 8(d). Notwithstanding the parties' agreement on these points, paragraph 8 also reflected their understanding and agreement that:

> (1) the parties are free to argue the applicability of *any other provision of the Sentencing Guidelines*, including offense conduct, offense characteristics, criminal history, adjustments and departures; (2) these stipulations are not binding upon either the Probation Department or the Court; and (3) the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed.

*Id.* ¶ 8 (emphasis added).

The plea agreement did not bind the Government to any particular position on the appropriate sentence, but provided the Government would "[m]ake whatever recommendation as to imprisonment . . . the government deems appropriate." *Id.* ¶ 5(b). The agreement further

specified Robertson would not be permitted to withdraw his plea in the event the Court "decline[d] to follow any recommendation, motion or stipulation by the parties to this agreement," and that "[n]o one ha[d] promised or guaranteed to [Robertson] what sentence the Court [would] impose." *Id.* ¶ 7.

Robertson's plea agreement also included a broadly worded appellate and collateral review waiver, in which Robertson "voluntarily and expressly waive[d] all rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law." *Id.* ¶ 9. This waiver provision is subject to certain limited exceptions. First, the waiver is "not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived." *Id.* Second, the plea agreement permitted Robertson to file a direct appeal of his sentence if the Government appealed from the sentence. *See id.* ¶ 9(a). Third, in the event the Government did not appeal, the plea agreement permitted Robertson to file a direct appeal raising only claims that

> (1)    the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph six above;
>
> (2)    the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines; and
>
> (3)    the sentencing judge, exercising the Court's discretion pursuant to *United States v. Booker*, 543 U.S. 220 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court.

*Id.* ¶ 9(b).

At the change of plea hearing, the Court reviewed Robertson's guilty plea agreement with him in some detail, confirming Robertson had read the agreement from cover to cover, reviewed it with his lawyer, understood it, and had no questions about it. Change of Plea Hr'g Tr. 44-46,

Mar. 10, 2011. With regard to the sentencing stipulations in Paragraph 8 of the agreement, the Court confirmed Robertson understood the stipulations would impact his potential sentence, and confirmed he was agreeing to a base offense level of seven; a loss amount of $1,495,117, corresponding to a 16-level increase in his base offense level; a two-level increase due to the number of victims involved; and a three-level reduction for acceptance of responsibility and timely notification of his intent to plead guilty. *Id.* at 46-49. The Court also confirmed Robertson understood he could potentially receive an additional four-level enhancement because of his role in the offense, depending upon the Court's ruling regarding this enhancement at sentencing, resulting in a possible total offense level of 26 based on the stipulations in the plea agreement.[2] *Id.* at 48-49. The Court made clear, however, that the stipulations were "not binding upon [the Court] nor the Probation officer," noting if "during the investigation of the Probation officer, something surfaces that changes these stipulations, I don't have to follow them," and that Robertson would not be able to withdraw his guilty plea if he did not like the sentence imposed. *Id.* at 50-51. The Court also ensured Robertson understood he was facing "significant incarceration" with a total aggregate statutory maximum on all counts of more than 1,000 years.[3] *Id.* at 27-29, 51.

---

[2] U.S.S.G. § 3B1.1, the aggravating role enhancement, provides for a four-level increase in offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," *id.* § 3B1.1(a), a three-level increase "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive," *id.* § 3B1.1(b), and a two-level increase "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b)," *id.* § 3B1.1(c).

[3] Prior to discussing the sentencing stipulations with Robertson, the Court reviewed the statutory maximum penalties he was facing, explaining he could be sentenced to up to five years on the conspiracy count, up to 30 years on each count of bank fraud and false statements on a loan application, and up to 10 years on the passport fraud count, resulting in a total exposure of 1,125 years. *Id.* at 27-29.

The Court also reviewed the appellate waiver with Robertson, directing his attention to the written waiver in paragraph 9 of the guilty plea agreement and confirming he had read the provision carefully and understood that by pleading guilty he was "giving up forever [his] right to appeal [or] to attack [his] conviction . . . , [his] sentence or any other matter relating to the prosecution of this case, whether such a right to appeal or to attack arises under these provisions of law or any other provision of law." *Id.* at 52. The Court went on to explain the narrow circumstances in which Robertson would be permitted to appeal. *Id.* at 52-53.

At the conclusion of the change of plea hearing, upon finding Robertson was competent and understood the charges against him, the elements of each offense, the maximum penalties he was facing, and the trial and appellate rights he was giving up; that his decision to plead guilty was knowing and voluntary; and that the Government had independent evidence to prove the charges beyond a reasonable doubt, the Court accepted Robertson's guilty plea. *Id.* at 58-59.

Following Robertson's guilty plea, the U.S. Probation Office prepared a Presentence Investigation Report (PSR) in which the probation officer calculated Robertson's sentencing range under the Guidelines.[4] Consistent with the stipulations in paragraph 8 of the plea agreement, the PSR assigned Robertson a base offense level of seven pursuant to U.S.S.G. § 2B1.1(a)(1); increased the offense level by 16 levels based on the loss amount pursuant to U.S.S.G. § 2B1.1(b)(1)(I)[5]; applied a two-level increase pursuant to U.S.S.G. § 2B1.1(b)(2)(A) based on the number of victims; resolved the parties' dispute regarding the applicability of an

_____

[4] Robertson was sentenced in July 2011; therefore, his sentencing range was calculated based on the November 1, 2010, edition of the Federal Sentencing Guidelines Manual. *See* PSR ¶ 3. All citations to the Guidelines herein are to the November 1, 2010, Manual.

[5] Although the PSR concluded the applicable loss amount was $1,209,064, below the nearly $1.5 million loss amount to which the parties had stipulated, this reduced loss amount corresponded to the same 16-level increase in offense level under the Guidelines. *See* U.S.S.G. § 2B1.1(b)(1)(I) (providing for a 16-level increase for a loss more than $1,000,000 but not more than $2,500,000).

aggravating role enhancement in favor of the Government and applied a two-level upward adjustment pursuant to U.S.S.G. § 3B1.1(c); and reduced Robertson's total offense level by three levels pursuant to U.S.S.G. § 3E1.1(a) and (b) for Robertson's acceptance of responsibility and timely notification of his intention to plead guilty. *See* PSR ¶¶ 24-26, 30, 33-34. In addition to applying the foregoing adjustments, the PSR applied two sentencing enhancements not addressed in the parties' stipulations: (1) a two-level increase in offense level pursuant to U.S.S.G. § 2B1.1(b)(9)(C) for Robertson's use of sophisticated means to perpetrate the fraud, *id.* ¶ 27, and (2) a two-level increase pursuant to U.S.S.G. § 2B1.1(b)(10)(C)(i) and Application Note 9(C)(ii) for Robertson's production of fraudulent identification documents to further the scheme, *id.* ¶ 28. The PSR also assigned Robertson a total of six criminal history points, resulting in a criminal history category of III. *See id.* ¶ 58. With a recommended total adjusted offense level of 28 and a criminal history category of III, Robertson's sentencing range, according to the PSR, was 97–121 months. *Id.* ¶ 106.

Upon receipt of the PSR and in his sentencing memorandum, Robertson objected to both the sophisticated means enhancement and the enhancement for production of fraudulent identification documents, arguing these enhancements were inapplicable in his case.[6] Robertson also objected to being assessed one criminal history point for a Montgomery County, Pennsylvania conviction for theft by deception, one criminal history point for a Burlington County, New Jersey conviction for bad checks, and two criminal history points for being on probation in Burlington County at the time of the offense of conviction. Robertson maintained he should have been assigned only two criminal history points, placing him in criminal history category II rather than III. The Government did not object to the PSR and argued in favor of the

---

[6] Robertson did not object to the two-level aggravating role enhancement, although he had reserved the right to do so in his plea agreement.

PSR's recommended enhancements for sophisticated means and production of fraudulent identification documents in its sentencing memorandum. In a supplemental sentencing memorandum, Robertson argued the Government's support for the two enhancements not addressed in the guilty plea agreement was "inappropriate" in light of the parties' stipulations, but maintained the enhancements were inapplicable in any event. Def.'s Supplemental Sentencing Mem. 2-3 (noting the stipulations were the product of negotiation in which the parties "gave great weight to the applicability of the available enhancements and compromised regarding their positions to reach a resolution of the matter"). Robertson did not take the position that the Government's support for the enhancements constituted a breach of the plea agreement.

The case proceeded to sentencing on July 25, 2011. At the sentencing hearing, this Court overruled Robertson's objections to the two-level sophisticated means enhancement and to the assessment of one criminal history point each for his Montgomery County, Pennsylvania and Burlington County, New Jersey convictions. However, the Court sustained Robertson's objection to the two-level enhancement for production of fraudulent identification documents and found Robertson should not have been assessed criminal history points for being on probation at the time of the offense conduct. Sentencing Hr'g Tr. 22-23, July 25, 2011; *see also* ECF Nos. 27 & 28. With these adjustments to the PSR, Robertson's total adjusted offense level under the Sentencing Guidelines was 26, and, with a total of four criminal history points, he remained in criminal history category III, resulting in an advisory Guidelines range of 78–97 months. Sentencing Hr'g Tr. 23-24. After considering the factors set forth in 18 U.S.C. § 3553(a), the Court sentenced Robertson to a total of 96 months of imprisonment, consisting of 60 months on the conspiracy count and 96 months on each of the remaining counts, all such

terms to be served concurrently. *Id.* at 63. Judgment was entered in the case on August 12, 2011.

Notwithstanding the appellate waiver in his guilty plea agreement, Robertson appealed his sentence, and the Government thereafter filed a motion to enforce the appellate waiver and for summary affirmance, which Robertson opposed. By Order of November 8, 2011, the Third Circuit Court of Appeals granted the Government's motion.[7]

On June 19, 2012, Robertson filed the instant § 2255 motion, raising claims that the Government breached the plea agreement and his counsel was ineffective. Robertson contends the Government breached the plea agreement by arguing in favor of a two-level enhancement for sophisticated means, which was not among the enhancements to which the parties had stipulated or which the parties had otherwise addressed in the plea agreement. Robertson also alleges his counsel was ineffective for (1) advising him the only sentencing enhancements the Government would seek were those specified in the plea agreement, (2) failing to object to the Government's breach of the plea agreement at sentencing, and (3) failing to challenge the PSR's assignment of

---

[7] The Government's motion to enforce Robertson's appellate waiver and for summary affirmance is not available on the public docket in his appeal. In his opposition to the motion, however, Robertson argued the motion should be denied because the issues he wished to raise on appeal—that the Government breached the plea agreement by arguing for a sentencing enhancement excluded from the agreement and acted in bad faith by arguing a prior conviction related to the conspiracy charged should be used to increase his criminal history score—were not included in the waiver. In reply, the Government acknowledged Robertson's appellate waiver would not be binding if the Government breached its own obligations under the plea agreement, but argued Robertson's claim of breach was frivolous, given the plea agreement's explicit statement that, notwithstanding the parties' stipulations under the Sentencing Guidelines, the parties were "free to argue the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments and departures." Appellee's Reply to Def.'s Resp. to Appellee's Mot. to Enforce Appellate Waiver and for Summ. Affirmance 3 (quoting Guilty Plea Agreement ¶ 8). The Government further argued its sentencing position regarding Robertson's criminal history did not constitute a breach of the plea agreement, as the agreement was entirely silent regarding the calculation of Robertson's criminal history.

one criminal history point for his Burlington County, New Jersey bad checks conviction pursuant to U.S.S.G. § 4A1.2(c)(1). On November 26, 2012, the Government filed a motion to dismiss Robertson's § 2255 motion based on the waiver of collateral review rights in his guilty plea agreement.

**DISCUSSION**

A criminal defendant "may waive both constitutional and statutory rights," including the right to appeal or to collaterally challenge his sentence, provided the waiver is entered into "voluntarily and with knowledge of [its] nature and consequences." *United States v. Mabry*, 536 F.3d 231, 236-37 (3d Cir. 2008). A waiver of collateral review rights, if entered into knowingly and voluntarily, is valid and enforceable unless enforcement of the waiver would work a miscarriage of justice. *See id.* at 244. Because "[a] defendant's appellate waiver is not enforceable if the government breaches its own obligations under a plea agreement," *United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008), the Court will first address Robertson's claim that the Government breached his guilty plea agreement by arguing in favor of a sentencing enhancement beyond those addressed in the plea agreement.[8] *See United States v. Whitmer*, 505 F. App'x 167, 171-74 (3d Cir. 2012) (addressing defendant's claim that the Government breached his plea agreement on the merits before considering whether to enforce appellate waiver as to defendant's other assertions of error).

Plea agreements are construed "according to the general principles of contract law," and, in recognition of the Government's "tremendous bargaining power," are construed strictly against the Government. *Schwartz*, 511 F.3d at 405 (internal quotation marks and citations

---

[8] The Third Circuit implicitly rejected this argument on direct appeal when it granted the Government's motion to enforce Robertson's appellate waiver and for summary affirmance, which Robertson opposed on the basis that the Government had breached the plea agreement.

omitted).  "In determining whether the Government has breached a plea agreement, a court must determine whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty."  *United States v. Hall*, 515 F.3d 186, 198 (3d Cir. 2008) (internal quotation marks and citations omitted).

Robertson asserts his plea agreement memorialized all of the enhancements the Government would seek at sentencing, and contends the Government breached the agreement by arguing in favor of the sophisticated means enhancement, which was not mentioned in the agreement.  Contrary to Robertson's assertion, however, immediately prior to reciting the parties' stipulations under the Sentencing Guidelines, the plea agreement specified the parties would be "free to argue the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments and departures." Guilty Plea Agreement ¶ 8.  Under the express terms of the plea agreement, the Government was permitted to "argue the applicability of" offense characteristics other than those to which the parties had stipulated.  *Id.*  Hence, the Government did not breach the plea agreement by advocating for the sophisticated means enhancement, a specific offense characteristic recommended by the probation officer.

Notwithstanding the plain language of the plea agreement cited above, Robertson argues the agreement as a whole should be construed as indicating the Government would seek only the enhancements addressed therein at sentencing.  In particular, Robertson argues the fact the plea agreement specifically noted the parties had "considered the enhancement under USSG § 3B1.1(c), and agree[d] to disagree as to the applicability of that factor" and the Government would "argue the applicability of that factor at the sentencing hearing," Guilty Plea Agreement ¶ 8(d), suggests "that the Government was not seeking any other enhancements not spelled out in

the agreement." Def.'s Mem. of Law 6. Robertson contends this more specific provision of the plea agreement should prevail over the more general language permitting the parties to argue the applicability of any other provision of the Sentencing Guidelines.

In support of this argument, Robertson cites *United States v. Rivera*, 357 F.3d 290, 295 (3d Cir. 2004), *abrogated on other grounds as recognized in United States v. Dahmen*, 675 F.3d 244 (3d Cir. 2012), in which the Third Circuit Court of Appeals interpreted a plea agreement in light of the general contract law principle that when a contract contains conflicting terms, the more specific term should usually be held to prevail over the more general term. *Rivera*, however, is readily distinguishable from this case. In *Rivera*, the defendant pleaded guilty pursuant to a plea agreement in which the parties had stipulated to the applicability of certain Guidelines provisions and also to a total offense level of 35. When the PSR subsequently recommended a four-level increase in Rivera's offense level pursuant to a Guidelines provision not addressed in the plea agreement, the Government supported the enhancement, even though it increased Rivera's total offense level to 39, above the level to which the parties had stipulated. On appeal, the Third Circuit held the Government had breached Rivera's plea agreement by endorsing the PSR's recommendation of an offense level of 39 after having stipulated that the applicable offense level was 35. In so holding, the court rejected the Government's argument that its support for the challenged enhancement did not constitute a breach because the plea agreement permitted the Government to "take any position with respect to the appropriate sentence to be imposed on [Rivera]," finding the parties' more specific stipulation regarding the applicable offense level trumped this more general provision. *Id.*

In Robertson's plea agreement, in contrast, the parties did not stipulate to an overall offense level,[9] and nothing in the plea agreement precluded the Government from arguing in favor of sentencing enhancements beyond those addressed in the parties' stipulations. To the contrary, Robertson's plea agreement not only permitted the Government to "[m]ake whatever sentencing recommendation as to imprisonment . . . [it] deem[ed] appropriate," Guilty Plea Agreement ¶ 5(b), but also expressly authorized the parties to argue the applicability of any Guidelines provision, other than those provisions addressed in the stipulations, *see id.* ¶ 8. Moreover, the plea agreement provision permitting the parties to "argue the applicability of any other provision of the Sentencing Guidelines" does not conflict with the provision memorializing the parties' agreement to disagree regarding the applicability of a § 3B1.1(c) aggravating role enhancement, such that resort to the rule of interpretation cited by Robertson is necessary. The latter provision reflects the parties' agreement on how to proceed as to a particular enhancement about which they had negotiated, but on which they were unable to agree, whereas the former permits the parties to argue the applicability of Guidelines not addressed in their stipulations.

As for Robertson's argument that the parties' agreement to disagree regarding the § 3B1.1(c) enhancement should be understood as indicating the Government would not seek any other enhancements not spelled out in the agreement, a panel of the Third Circuit previously

---

[9] Robertson argues the parties implicitly agreed his final Guidelines range would be based solely on the stipulations in the plea agreement because the agreement specified "the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed," Guilty Plea Agreement ¶ 8, thereby implying the existence of an agreed-upon final Sentencing Guidelines range. The Court rejects this argument, which directly contradicts the statement two clauses earlier in the same paragraph that "the parties are free to argue the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments and departures." *Id.* The Court also notes the plea agreement does not purport to specify *any* Guidelines range, much less a final range, as it does not address Robertson's criminal history category.

rejected a similar argument in *United States v. Wells*, 124 F. App'x 735 (3d Cir. 2005).[10]  In

*Wells*, as in this case, the defendant argued the Government had breached his plea agreement by

arguing for sentencing enhancements not contained in the agreement.  The court rejected the

argument, however, finding nothing in the plea agreement that precluded the Government from

commenting on the challenged adjustments, where the plea agreement "contained no stipulation

to the appropriate offense level that could be implicated by the government's comments" and

expressly permitted the Government to "take any position on a sentencing issue not otherwise

addressed in the agreement," and where the plea agreement contained a merger clause, making it

fully integrated.  *Id.* at 737.  In so holding, the court specifically rejected the defendant's

argument that a plea agreement provision in which the parties reserved their right to argue about

the applicability of a particular Guidelines provision "reflect[ed] an implicit understanding that

no other enhancements were considered by the parties to be applicable," noting it had previously

rejected similar "attempts by defendants to claim that the government breached an 'implicit'

understanding in a plea agreement."  *Id.* (citing *United States v. Medford*, 194 F.3d 419, 423 &

n.4 (3d Cir. 1999)); *see also Dahmen*, 675 F.3d at 248-49 (rejecting argument that the

Government breached a plea agreement by seeking a Chapter 4 sentencing enhancement not

addressed in the parties' stipulations, which the district court treated as binding, where

stipulations referenced certain enhancements pursuant to Chapters 2 and 3 of the Guidelines, but

made no mention of any enhancements pursuant to Chapter 4).

In his reply brief, Robertson maintains (in support of his ineffective assistance of counsel

claim) that during the negotiations regarding his plea agreement, the parties agreed the only

---

[10] The Court recognizes that, as a non-precedential opinion, *Wells* is not regarded as binding
Third Circuit precedent; however, it and any other non-precedential opinions cited herein are
cited as persuasive authority.

enhancements the Government would seek were the enhancements outlined in the plea agreement. *See* Def.'s Reply 9, 22-23. The record, however, does not support Robertson's position. In the plea agreement itself, the parties agreed the "guilty plea agreement contains no additional promises, agreements or understandings other than those set forth in this written guilty plea agreement, and that no additional promises, agreements or understandings will be entered into unless in writing and signed by all parties." Guilty Plea Agreement ¶ 12. Yet the agreement does not purport to limit the Government's ability to pursue enhancements beyond those set forth in the stipulations, and Robertson does not point to any other writing memorializing such an agreement. Robertson has also submitted a statement from his plea counsel in which counsel represents he advised Robertson that "if he signed the plea agreement, the government would not seek any further guidelines enhancements other than those contained in the agreement and role in the offense." Statement of Patrick J. Egan, Esq. ¶ 4, ECF No. 53 at 2. According to the statement, however, the basis for this advice was counsel's "more than twenty years experience during which time the government had never sought an enhancement beyond those contained in any plea agreement I had entered into." *Id.* The statement nowhere suggests the parties affirmatively agreed the Government would not seek any further enhancements.[11] In addition to submitting his attorney's statement, Robertson has also submitted a memo he received from his

---

[11] This Court also rejects Robertson's suggestion that the Government implicitly acknowledged having made such an agreement when the AUSA stated at sentencing that she "fe[lt] bound" by her negotiations with defense counsel in relation to the enhancement for production of fraudulent identification documents. *See* Sentencing Hr'g Tr. 15. The substance of the negotiations by which the AUSA felt bound is not at all clear from the record; if anything, the sentencing transcript suggests the negotiations may have concerned the Government's inability to prove Robertson knew the identification he was using was of a real person at the time he was using it. *See id.* at 17. There is thus no basis on which to conclude the AUSA felt bound because of any affirmative agreement not to seek enhancements other than those referenced in the plea agreement. Moreover, the AUSA's comments on which Robertson relies pertained only to the enhancement for production of fraudulent identification documents.

attorney regarding his potential sentencing exposure if he were convicted at trial. ECF No. 56 at 37. As this memo reflects only defense counsel's analysis of the sentencing enhancements that might apply in the absence of a plea agreement, it also lends no support to Robertson's position.

Finally, Robertson suggests he was under the impression the Government would take no position on any enhancements beyond those addressed in the plea agreement because the Government agreed with defense counsel's estimation of Robertson's Guidelines calculation (which was based on the stipulations in the plea agreement) at the change of plea hearing, and agreed the only issue in dispute was the aggravating role enhancement. Def.'s Reply 8-9, 29-30. As Robertson suggests, when this Court inquired about Robertson's Guidelines toward the end of the change of plea hearing, defense counsel provided an estimate based on an offense level derived from the parties' stipulations, and the Government agreed with counsel's recitation. Change of Plea Hr'g Tr. 59-61. It is clear from the hearing transcript, however, that counsel was providing, and the Government was agreeing to, only an estimate of Robertson's potential Guidelines range. The Court requested the information simply "to get a sense of" Robertson's potential sentencing range, and explained to Robertson that ultimately the Court would determine the applicable Guidelines range after receiving a recommendation from the probation officer and any objections thereto. *Id.* at 60-61. The Court also took pains to ensure Robertson understood that the parties' stipulations were not binding on either the Court or the probation officer, and that the Guidelines were only a "starting point" for the Court in any event. *Id.* at 49-51. When asked whether the Government agreed with defense counsel's estimation of Robertson's potential offense level (somewhere between 22 and 26) and criminal history category (either a II or a III), the AUSA responded in the affirmative, *id.* at 59-60, but made no representation regarding the position it would take at sentencing on issues beyond those

addressed in the stipulations. In these circumstances, and given the language of the plea agreement expressly permitting the parties to argue the applicability of other Guidelines provisions at sentencing, the Government's agreement with counsel's estimation could not reasonably have been construed as reflecting the Government's position on Robertson's final Guidelines range. *Cf. United States v. Nesbitt*, 281 F. App'x 120, 122-23 (3d Cir. 2008) (rejecting defendant's argument that the Government breached his plea agreement where parties agreed at the plea hearing that "the realistic sentencing range was 11 years," but the Government then sought an additional four-level role in the offense enhancement which increased the bottom of the applicable Guidelines range to 17½ years, where the plea agreement "did not contain any express promise by the government to not seek an enhancement for his role").

Nothing in Robertson's plea agreement precluded the Government from arguing in favor of the sophisticated means enhancement, and the plea agreement expressly permitted the Government to argue in favor any Guidelines provision not addressed therein. The Court therefore finds the Government did not breach Robertson's plea agreement by supporting the sophisticated means enhancement recommended by the probation officer at sentencing.

Having determined the Government did not breach Robertson's plea agreement, the Court must decide whether to enforce Robertson's collateral review waiver as to his remaining claims of ineffective assistance of counsel. When the Government invokes a waiver of collateral review rights to bar review of the merits of a defendant's claims, a court must consider (1) whether the waiver was knowing and voluntary; (2) "'whether one of the specific exceptions set forth in the agreement prevents the enforcement of the waiver;' *i.e.*, what is the scope of the waiver and does it bar . . . review of the issue pressed by the defendant"; and (3) "'whether

enforcing the waiver would work a miscarriage of justice.'" *United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008) (quoting *United States v. Jackson*, 523 F.3d 234, 243-44 (3d Cir. 2008)).

Although Robertson does not challenge the knowing and voluntary character of his waiver of collateral review rights, "a district court has an independent obligation to conduct an evaluation of the validity of a collateral waiver." *Mabry*, 536 F.3d at 238. Upon review of Robertson's plea agreement and the plea colloquy, this Court finds Robert's collateral review waiver was knowing and voluntary. *See id.* (examining the defendant's written plea agreement and change of plea colloquy to determine whether his collateral review waiver was knowing and voluntary). The waiver itself is extremely broad, reflecting Robertson's agreement to "waive[] *all* rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law," subject to certain specified exceptions. Guilty Plea Agreement ¶ 9 (emphasis added). The plain language of the waiver—which Robertson admitted he read carefully—thus makes clear the waiver applies to both direct appeal and collateral review, including a motion pursuant to 28 U.S.C. § 2255.

Moreover, in reviewing the guilty plea agreement with Robertson at the change of plea hearing, this Court specifically directed his attention to the written waiver and confirmed he had read the waiver carefully and understood it, as required by Federal Rule of Criminal Procedure 11. *See* Fed. R. Crim. P. 11(b)(1)(N) (providing that before accepting a guilty plea, a court must "inform the defendant of, and determine that the defendant understands, . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence"). Specifically, the Court confirmed Robertson understood

> that by pleading guilty, you are giving up forever your right to appeal [or] to attack your conviction because you're pleading guilty, your sentence or any other

17

> matter relating to the prosecution of this case, whether such a right to appeal or to
> attack arises under these provisions of law or any other provision of law.

Change of Plea Hr'g Tr. 52. The Court also confirmed Robertson understood the limited

circumstances in which he would be permitted to appeal his sentence notwithstanding the waiver.

*Id.* at 52-53. Finally, in reviewing with Robertson the two-page Acknowledgment of Rights

form summarizing the rights he was giving up by pleading guilty, including the "right to appeal,

except as set forth in appellate waiver provisions of [his] plea agreement," Acknowledgment of

Rights ¶ 6, the Court confirmed Robertson wished to give up his appellate rights and plead

guilty. *Id.* at 56. The change of plea colloquy, together with the plain language of the waiver

itself, amply demonstrate Robertson's waiver of his collateral review rights was knowing and

voluntary.

This Court also concludes Robertson's ineffective assistance of counsel claims are

encompassed by the broad language of the waiver and none of the narrow exceptions to the

waiver applies. Because the Government did not appeal Robertson's sentence, the exception

permitting Robertson to file a direct appeal of his sentence "if the government appeals from the

sentence," Guilty Plea Agreement ¶ 9(a), is plainly inapplicable. The three remaining exceptions

permit an appeal raising a claim that (1) Robertson's "sentence on any count of conviction

exceeds the statutory maximum for that count as set forth in paragraph six," *id.* ¶ 9(b)(1), or that

the sentencing court (2) "erroneously departed upward pursuant to the Sentencing Guidelines,"

*id.* ¶ 9(b)(2), or (3) "imposed an unreasonable sentence above the final Sentencing Guideline

range determined by the Court," *id.* ¶ 9(b)(3). As Robertson's sentence did not exceed either the

statutory maximum on any count or the advisory Guidelines range, and as the Court did not depart upward in imposing his sentence, these exceptions are also inapplicable.[2]

Because Robertson's collateral review waiver was knowing and voluntary, and because his claims for relief are within the waiver's scope, the waiver bars this Court from reviewing the merits of the claims unless enforcing it would work a miscarriage of justice. *See United States v. Khattak*, 273 F.3d 557, 562-63 (3d Cir. 2001). The Third Circuit has adopted a "common sense approach in determining whether a miscarriage of justice would occur if [a] waiver were enforced." *Mabry*, 536 F.3d at 242. Under this approach, a court should consider such factors as "'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result' . . . before invalidating a waiver as involving a 'miscarriage of justice.'" *Id.* at 242-43 (quoting *United States v. Teeter*, 257 F.3d 14, 25-26 (1st Cir. 2001)). "Courts apply the miscarriage of justice exception sparingly and without undue generosity, but with the aim of avoiding manifest injustice." *United States v. Castro*, 704 F.3d 125, 136 (3d Cir. 2013) (internal quotation marks and citations omitted).

Consistent with this principle, the Third Circuit has held enforcing a collateral review waiver would result in a miscarriage of justice only in limited circumstances. With respect to

---

[2] Although Robertson suggests his criminal history category "fell totally outside of the waiver" because it was not a part of the parties' negotiations or the resulting plea agreement, Def.'s Reply 12, the calculation of his criminal history category is not one of the issues expressly preserved for appeal in the plea agreement, and the issue is therefore waived, subject to the miscarriage of justice exception. As for the exception for "constitutional claims that the relevant case law holds cannot be waived," Guilty Plea Agreement ¶ 9, a panel of the Third Circuit Court of Appeals has commented that while the case law regarding this exception is "sparse," the exception appears to be "subsumed by the miscarriage of justice exception to the enforceability of a waiver," *United States v. Ladner*, 485 F. App'x 554, 557 (3d Cir. 2012), which is addressed in greater detail below.

ineffective assistance of counsel claims in particular, the Third Circuit has held it would work a miscarriage of justice to enforce a collateral review waiver as to a claim that counsel's constitutionally deficient performance prevented a defendant from understanding his plea agreement or from timely filing a direct appeal expressly preserved in his plea agreement, *United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007), but not as to a claim that counsel was ineffective for failing to file a direct appeal raising issues clearly encompassed by the defendant's appellate waiver, *Mabry*, 536 F.3d at 243-44.[12]

Here, Robertson argues his counsel was ineffective for: (1) advising him (incorrectly) the Government would not seek any sentencing enhancements beyond those addressed in the stipulations in his plea agreement; (2) failing to object that the Government had breached the plea agreement by arguing in favor of the sophisticated means enhancement; and (3) failing to object to the PSR's assignment of one criminal history point for his Burlington County, New Jersey bad checks conviction on the basis that he was not sentenced to a term of probation of more than one year or a term of imprisonment of at least 30 days, as required for the sentence to be counted pursuant to U.S.S.G. § 4A1.2(c)(1). To establish a claim of ineffective assistance of counsel, a defendant must show (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the deficiency element, the defendant must demonstrate "counsel's representation fell

---

[12] Although there is language in *Shedrick* that could be construed as suggesting that a collateral review waiver is not enforceable as to any ineffective assistance of counsel claim, *see* 493 F.3d at 298 n.6 (noting "the Seventh Circuit Court of Appeals has specifically held that ineffective assistance of counsel qualifies as a miscarriage of justice sufficient to overcome a waiver-of-appeal provision" (citations omitted)), the Third Circuit subsequently held in *Mabry* that it would not result in a miscarriage of justice to enforce a waiver as to a claim counsel was ineffective for not filing a direct appeal not expressly preserved in the defendant's plea agreement, 536 F.3d at 243. *See also United States v. Padilla-Castro*, 426 F. App'x 60, 62-63 (3d Cir. 2011) (noting the Third Circuit "ha[s] not addressed whether ineffective assistance of counsel will always invalidate a waiver").

below an objective standard of reasonableness," which requires "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687-88. To establish prejudice, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

This Court's conclusion that the Government did not breach Robertson's guilty plea agreement by supporting the sophisticated means enhancement disposes of Robertson's claim his counsel was ineffective for failing to object to an alleged breach. Because there was no breach, counsel cannot have been ineffective for failing to argue to the contrary. Rather, counsel appropriately confined his objection to arguing it was inappropriate for the Government to argue for enhancements to which the parties had not stipulated in light of the parties' negotiations. Enforcing Robertson's collateral review waiver as to this claim would not work a miscarriage of justice.

The Court also finds it would not work a miscarriage of justice to enforce Robertson's waiver as to his claim counsel was ineffective for failing to adequately object to the assignment of one criminal history point for his Burlington County, New Jersey bad checks conviction. Although defense counsel in fact objected to the use of this conviction in calculating Robertson's criminal history score, arguing the conviction (along with the Montgomery County conviction) should not have been counted because the conduct underlying both offenses was "part and parcel of the present conspiracy," Def.'s Sentencing Mem. 8, Robertson contends counsel was ineffective for not contesting the use of the conviction under U.S.S.G. § 4A1.2(c)(1), which limits the circumstances in which sentences for certain misdemeanor and petty offenses are

counted toward a defendant's criminal history score. Under § 4A1.2(c)(1), a sentence for the misdemeanor offense of "[i]nsufficient funds check" (or similar offenses) is counted "only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense." Robertson argues his New Jersey bad checks conviction should not have been counted because he was sentenced to only one year of probation.

As noted, however, § 4A1.2(c)(1) limits the assignment of criminal history points only when the sentence at issue is for a misdemeanor or petty offense. The Guideline specifically provides that "[s]entences for *all* felony offenses are counted," U.S.S.G. § 4A1.2(c) (emphasis added), and defines the term "felony offense" to mean "any federal, state, or local offense punishable by death or a term of imprisonment exceeding one year, regardless of the actual sentence imposed," *id.* § 4A1.2(o). In the Burlington County case, Robertson pleaded guilty to the offense of bad checks in the third degree, in violation of N.J. Stat. Ann. § 2C:21-5.[13] Although Robertson received a probationary sentence, *see* PSR ¶ 55, this offense is punishable by imprisonment for three to five years and is therefore a felony for purposes of § 4A1.2. *See* N.J. Stat. Ann. § 2C:43-6a(3) (specifying sentencing range for crimes of the third degree).[14] As

---

[13] Under New Jersey law, the offense of bad checks may be a second-, third-, or fourth-degree offense (or a "disorderly persons offense"), depending upon the amount of the check. While Robertson's PSR does not indicate the degree of his bad checks conviction in the Burlington County case (Indictment No. 08-12-01376), the information regarding this conviction available on the New Jersey Courts' website, https://njcourts.judiciary.state.nj.us, reflects he pleaded guilty to bad checks in the third degree. In addition, the PSR indicated Robertson was ordered to pay $13,908.50 in restitution, PSR ¶ 55, an amount consistent with the third-degree offense, *see* N.J. Stat. Ann. § 2C:21-5c(2) (defining third-degree bad checks offense as involving a check for "$1,000.00 or more but . . . less than $75,000.00").

[14] While the sentencing range for third-degree crimes is three to five years, New Jersey law creates a presumption against imprisonment for certain first-time third-degree offenders. *See* N.J. Stat. Ann. § 2C:44-1e. Where, as here, a defendant convicted of a third-degree offense has a

a result, § 4A1.2(c)(1) does not preclude the bad checks conviction from being used to compute

his criminal history, and Robertson's counsel was not ineffective for failing to object to the use

of the conviction pursuant to this provision.[15]

---

prior record, *see* PSR ¶¶ 41, 43, 48, there is no presumption either in favor of or against incarceration. Rather, "the sentencing court 'must weigh the aggravating and mitigating factors' enumerated in N.J.S.A. § 2C:44-1a and b 'to determine whether a probationary or custodial sentence is appropriate.'" *State v. Meyer*, 930 A.2d 428, 433 n.5 (N.J. 2007) (quoting *State v. Baylass*, 553 A.2d 326 (N.J. 1989)). In any event, because the presumption against imprisonment does not preclude imposition of an incarceration sentence within the three-to-five-year range, even for first-time offenders, it is not clear that it would affect whether a third-degree offense is a felony for purposes of federal law. *See United States v. Minnick*, 949 F.2d 8, 9-10 (1st Cir. 1991) (holding New Jersey convictions for third-degree crimes carrying the possibility of a three-to-five-year term of imprisonment rendered the defendant a "felon" for purposes of a federal statute defining a felon as one convicted of a crime punishable by imprisonment for a term exceeding one year").

[15] Moreover, although framed in terms of counsel's ineffectiveness, Robertson's claim regarding his bad checks conviction concerns an alleged error in determining his Guidelines range. Outside the ineffective assistance of counsel context, the Third Circuit has held such errors are not the kind of errors that "justify setting aside an appellate waiver because 'allow[ing] alleged errors in computing a defendant's sentence to render a waiver unlawful would nullify the waiver based on the very sort of claim it was intended to waive.'" *United States v. Corso*, 549 F.3d 921, 931 (3d Cir. 2008) (quoting *United States v. Smith*, 500 F.3d 1206, 1213 (10th Cir. 2007)) (holding enforcing defendant's appellate waiver as to claim district court improperly applied two enhancements in calculating his Guidelines range would not constitute a miscarriage of justice); *see also Castro*, 704 F.3d at 141-42 (holding "a district court's arguably erroneous calculation of a guidelines range 'is precisely the kind of garden 'garden variety' claim of error contemplated by [an] appellate waiver'" (quoting *Sotirion v. United States*, 617 F.3d 27, 38 (1st Cir. 2010))).

While the Third Circuit has not addressed the issue, numerous other courts of appeals have held a collateral review waiver may be enforced as to this kind of claim of ineffective assistance of counsel at sentencing. *See Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005); *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002); *Garcia-Santos v. United States*, 273 F.3d 506, 508-09 (2d Cir. 2001); *Davila v. United States*, 258 F.3d 448, 451-52 (6th Cir. 2001); *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001); *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000). *But see United States v. Attar*, 38 F.3d 727, 732 (4th Cir. 1994) (holding an appellate waiver is not enforceable as to a claim "that the proceedings following entry of the guilty plea were conducted in violation of [the defendant's] Sixth Amendment right to counsel"). As several of these courts have recognized, if the law were otherwise, a defendant would be able to circumvent an appellate waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless. *See Williams*, 396 F.3d at 1342; *White*, 307 F.3d at 344; *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998); *cf. United States v. Joiner*, 183 F.3d 635, 645 (7th Cir. 1999)

Finally, Robertson alleges his attorney was ineffective for erroneously advising him the Government would not seek any sentencing enhancements beyond those addressed in the stipulations in his plea agreement. In *Shedrick*, the Third Circuit declined to enforce a defendant's collateral review waiver as to a similar claim that his plea counsel was ineffective for failing to "advise him about a potential enhancement or upward departure at sentencing," and instead addressed the claim on the merits. *See* 493 F.3d at 298-99 (holding it would be a miscarriage of justice to enforce a collateral attack waiver where "constitutionally deficient lawyering" prevented the defendant from understanding "the full effect of his guilty plea as it related to upward departures"). The Court will do the same here.

In *Shedrick*, the Third Circuit held the defendant's allegations that his plea counsel had failed to advise him about a potential sentencing enhancement or upward departure under the Guidelines could not support a claim of ineffective assistance of counsel where the defendant had been advised during his guilty plea colloquy and in his guilty plea agreement of his maximum potential sentencing exposure and the sentencing court's discretion. *Id.* at 299. In rejecting the defendant's claim, the court relied on circuit precedent holding "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where . . . an adequate plea hearing was conducted." *Id.* (citing *United States v. Jones*, 336 F.3d 245, 254 (3d Cir.

---

(remarking "garden-variety attacks on his sentence" that defendant "want[ed] to raise, in the guise of a claim of ineffective assistance of counsel, are exactly the sort of claims he knowingly and intelligently waived"). Consistent with the Third Circuit's recognition that a collateral review waiver is not enforceable as to a claim that counsel was "ineffective or coercive in negotiating the very plea agreement that contained the waiver," *Mabry*, 536 F.3d at 243, the courts that have held a collateral review waiver is enforceable as to a claim of ineffective assistance of counsel at sentencing have distinguished such claims from claims of attorney ineffectiveness with respect to the waiver itself or the plea agreement of which it is a part, as to which the waiver cannot be enforced. *See, e.g.*, *Mason*, 211 F.3d at 1069. The Court finds these decisions persuasive and therefore concludes enforcement of Robertson's collateral review waiver as to his claim of ineffective assistance of counsel at sentencing would not result in a miscarriage of justice based on the foregoing authorities as well.

2003); *United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001); and *Masciola v. United States*, 469 F.2d 1057, 1059 (3d Cir. 1972)). The court noted the law does not require "that a defendant be given a reasonably accurate 'best guess' as to what his/her actual sentence will be," but requires only "that the defendant be informed of his/her exposure in pleading guilty." *Id.* (quoting *Mustafa*, 238 F.3d at 492 n.5). Thus, even assuming counsel had provided the defendant with erroneous sentencing information, such erroneous information was corrected by the written plea agreement and the in-court colloquy, both of which advised the defendant "(1) he faced a maximum potential sentence of ten years' incarceration, (2) the parties were free to argue any other sentencing issues . . . , (3) the District Court retained ultimate discretion over the sentence, and (4) there were no other agreements or promises regarding [his] potential sentence." *Id.* at 299-300.

The same is true here. As in *Shedrick*, Robertson's written, signed guilty plea agreement advised him (1) he was facing a total statutory maximum sentence of 1,125 years, Guilty Plea Agreement ¶ 6; (2) the parties were free to "argue the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments and departures," *id.* ¶ 8; (3) the Court was not bound by the parties' stipulations under the Sentencing Guidelines, and Robertson would not be permitted to withdraw his plea in the event the Court declined to follow the parties' stipulations, *id.* ¶¶ 7-8; and (4) no one had promised or guaranteed Robertson what sentence the Court would impose, *id.* ¶ 7. At the change of plea hearing, the Court reviewed this information with Robertson. The Court advised Robertson he was facing "a ton of time," including up to 30 years of imprisonment on each count of bank fraud and making false statements to obtain a loan, and with a total exposure on all counts of 1,125 years of imprisonment. Change of Plea Hr'g Tr. 27-29. The Court also advised

Robertson his sentence would be determined by the Court, explaining the sentencing stipulations in the plea agreement were not binding on the Court or the Probation Office, that the Court would ultimately determine the applicable Guidelines range after receiving a recommendation from the Probation Office, that the Guidelines were "just a starting point" for the Court in determining Robertson's sentence in any event, and that Robertson would not be able to withdraw his guilty plea if he did not like the sentence imposed. *See id.* at 49-51, 60. In addition, the Court confirmed with Robertson that no one had promised him anything in exchange for his guilty plea. *Id.* at 24.[16]

Although Robertson's counsel undisputedly misinformed him that if he signed the plea agreement the Government would not seek any Guidelines enhancements beyond those addressed in the agreement, Robertson was admittedly aware the parties' stipulations were not binding on the Court, which could impose a sentence well in excess of the Guidelines range estimated by Robertson's counsel. Indeed, Robertson maintains he "had no complaints in regards to this court[']s consideration of implementing [the sophisticated means enhancement]," as his counsel had advised him neither the "Court nor the Probation Department were bound by the stipulations or the signed agreement." Def.'s Reply 7. Here, as in *Shedrick*, Robertson's "written plea agreement and in-court guilty plea colloquy clearly establish[ed] [his] maximum potential exposure and the sentencing court's discretion." 493 F.3d at 299. Hence, Robertson's counsel's failure to advise him of the potential for the Government to argue in favor of an

---

[16] The Court did not specifically discuss with Robertson the provision of the plea agreement regarding the parties' right to argue the applicability of Guidelines provisions other than those addressed in their stipulations; however, Robertson acknowledged he had read the agreement from cover to cover, reviewed it with his lawyer, understood it, and had no questions about it. *Id.* at 44-46.

enhancement beyond those addressed in the plea agreement does not amount to ineffective assistance of counsel.

Moreover, this ineffective assistance of counsel claim fails for the additional reason that Robertson has not shown he was prejudiced by his counsel's erroneous advice. In the context of a guilty plea, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In his memorandum of law in support of his § 2255 motion, however, Robertson makes clear he is *not* contending that had counsel advised him the Government could seek additional enhancements at sentencing, he would have proceeded to trial instead of pleading guilty. Def.'s Mem. of Law 5. Rather, he asserts if counsel had advised him correctly, "he would not have entered the written plea agreement that he did, but would have rejected that plea offer and sought a different one." *Id.* Such allegations are insufficient to show prejudice with respect to a defendant's claim that his guilty plea was the product of ineffective assistance of counsel.[17] *See Hill*, 474 U.S. at 60 (upholding the denial of a habeas petition alleging the petitioner's guilty plea was involuntary

---

[17] Robertson argues this case is not controlled by *Hill*, and suggests that under the Supreme Court's more recent decisions in *Missouri v. Frye*, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), he may show prejudice "without showing that the deficient performance preclude[ed] him from proceeding to trial." Def.'s Mem. of Law 5. *Frye* and *Lafler* are inapposite, however, as these cases address how to apply *Strickland*'s prejudice test where ineffective assistance prevented a defendant from accepting a plea. *See Frye*, 132 S. Ct. at 1409-11 (addressing the showing of prejudice a defendant must make when alleging counsel was ineffective for failing to communicate a formal plea offer which subsequently lapsed); *Lafler*, 132 S. Ct. at 1384-85 (addressing the showing of prejudice a defendant must make when alleging counsel's ineffectiveness led the defendant to reject a plea offer and proceed to trial). In *Frye*, moreover, the Supreme Court specifically reaffirmed its holding in *Hill*, noting "[i]n cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" 132 S. Ct. at 1409 (quoting *Hill*, 474 U.S. at 59).

because his counsel had misinformed him as to his parole eligibility date where petitioner "did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial"); *Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006) ("Under *Hill* and its progeny, a claim that a defendant would not have entered this particular plea agreement is not sufficient to show prejudice.").[18]

Upon review of the record, and for the reasons set forth above, this Court concludes enforcing Robertson's knowing and voluntary collateral review waiver as to his claims his counsel was ineffective for failing to object to the Government's alleged breach of the plea agreement and failing to appropriately object to the PSR's assignment of one criminal history point for his Burlington County, New Jersey conviction for bad checks would not work a

---

[18] Robertson also requests an evidentiary hearing and appointment of counsel; however, the Court concludes neither is warranted in this case. A district court need not hold an evidentiary hearing on a § 2255 motion when "the motion and the files and records of the case conclusively show the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Although Robertson alleges an evidentiary hearing is necessary on his ineffective assistance of counsel claim because there was a misunderstanding between the Government and defense counsel as to whether the Government could argue in favor of enhancements beyond those addressed in the plea agreement, the record does not support this assertion. As discussed above, the plea agreement itself expressly permitted the Government to "argue the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments and departures." Guilty Plea Agreement ¶ 8. Moreover, while defense counsel concedes he "advised Robertson that if he signed the plea agreement, the government would not seek any further guidelines enhancements other than those contained in the agreement and role in the offense," he did so not based on any explicit agreement with the Government but "based on more than twenty years experience during which time the government had never sought an enhancement beyond those contained in any plea agreement I had entered into." Egan Statement ¶ 4. For these reasons, and for the reasons set forth above, the Court finds the record conclusively demonstrates Robertson is not entitled to relief; therefore, his request for an evidentiary hearing will be denied.

As to Robertson's request for counsel, although this Court has discretion to appoint counsel for a financially eligible defendant in a § 2255 proceeding where "the interests of justice so require," 18 U.S.C. § 3006A(a)(2)(B), Robertson has been able to intelligently articulate his claims and the facts on which they are based in his pro se pleadings. Accordingly, his request for counsel will be denied.

miscarriage of justice. The Court also concludes Robertson has not shown the Government actually breached the plea agreement and has not established his attorney's advice that if he entered a guilty plea the Government would not seek any enhancements beyond those addressed in the plea agreement amounted to ineffective assistance of counsel. Because all of the claims in Robertson's § 2255 motion either are waived or fail on their merits, the Court will grant the Government's motion to dismiss. Because Robertson has not made a substantial showing of the denial of a constitutional right, this Court will decline to issue a certificate of appealability.

An appropriate order follows.

BY THE COURT:


___/s/ Juan R. Sánchez_____
Juan R. Sánchez